UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANTHONY GONZALES, et al., | Case No. 2:18-CV-1762 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| NYE COUNTY, NEVADA, et al., | |
| Defendant(s). | |

Presently before the court is defendants Nye Count, Nevada, and Sheriff Sharon Wehrly's ("defendants") motion for summary judgment. (ECF No. 19). Plaintiffs Anthony and Maria Gonzales ("plaintiffs") filed a response (ECF No. 21), to which defendants replied (ECF No. 22).

### I. Background

The instant action is a § 1983 claim against defendants arising from a traffic stop, Mr. Gonzales's arrest, and a search of plaintiffs' home. (ECF No. 1).

Mr. Gonzales was driving an off-highway vehicle without displaying any form of registration and without a helmet. *Id.* Deputy Nicholas Augustine stopped Mr. Gonzales, who did not have his driver's license with him. *Id.* Mr. Gonzales explained that, pursuant to Nev. Rev. Stat. § 490.082, he did not need a registration tag for his vehicle for 30 days. *Id.*

During the traffic stop, Mr. Gonzales grew "confrontational," raised his voice, and pointed his finger at Deputy Augustine. (ECF No. 19-1 at 12–13). Mr. Gonzales "was verbally abusive" and called Deputy Augustine an "asshole" and a "punk ass kid."[1] *Id.* Mr. Gonzales continued to disregard and resist instructions. *Id.* After Mr. Gonzales allegedly became physical

---

[1] During his deposition, Mr. Gonzales indicates that he called Deputy Augustine a "punk ass cop." (ECF No. 19-6 at 23–24).

**James C. Mahan**
**U.S. District Judge**

1  with Deputy Augustine, he was arrested for battery on a protected person, resisting arrest, and
2  multiple traffic violations. *Id.* at 13.

3  Once Mr. Gonzales was arrested, Deputy Augustine searched the off-highway vehicle
4  and found a firearm. *Id.* at 14. Deputy Augustine conducted a background check, known as a
5  "Triple I," which revealed that Mr. Gonzales had two felony convictions and several prior felony
6  arrests. *Id.* Mr. Gonzales later indicated that he owned several firearms. *Id.* Because Mr.
7  Gonzales was apparently a convicted felon, he was not allowed to possess a firearm. *Id.*
8  Consequently, Deputy Augustine applied for and obtained a warrant to search the Gonzales
9  residence. *Id.*

10 Officers executed the search warrant on the Gonzales residence and recovered a variety
11 of firearms and ammunition. *Id.* During the search, officers placed Mrs. Gonzales in wrist
12 restraints.[2] *Id.* at 15.

13 Plaintiffs filed the instant suit, alleging claims under 42 U.S.C. § 1983, malicious
14 prosecution, false imprisonment, false arrest, intentional infliction of emotional distress
15 ("IIED"), civil conspiracy, negligence, and respondeat superior. (ECF No. 1).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

---

[2] Defendants suggest that Mrs. Gonzales was placed in wrist restraints for roughly 20 minutes. (ECF No. 19-1 at 15). Plaintiffs contend that she remained in wrist restraints during the entire search. (ECF No. 21).

- 2 -

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all

justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. Discussion

*A. § 1983 claim*

The principal framework governing municipal liability in § 1983 actions against municipalities was established in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, municipal liability must be based upon the enforcement of a municipal policy or custom, not upon the mere employment of a constitutional tortfeasor. *Id.* at 691. Therefore, in order for liability to attach, four conditions must be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

"To prevent municipal liability . . . from collapsing into respondeat superior liability," federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that the municipality is not held liable solely for the actions of its employees." *Board of Cnty. Comm. of Bryan City v. Brown*, 520 U.S. 397, 405, 410 (1997).

Thus, a municipality will only be liable when the "execution of a government's policy or custom . . . inflicts the injury . . . ." *Monell*, 463 U.S. at 694.

In order to show a policy, the plaintiff must identify "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible

for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)) (internal quotation marks omitted).

"Proof of random acts or isolated events" does not fit within *Monell*'s meaning of custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds*, *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). Indeed, "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970))).

Moreover, plaintiff must allege a specific municipal policy in order to sustain his § 1983 claim. *See, e.g., Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[O]bviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm [(unreasonable use of force)] inflicted by a municipal official").

It is well settled in the Ninth Circuit that a plaintiff generally cannot establish a *de facto* policy with a single constitutional violation. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Instead, a plaintiff's theory must be founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d 1135 (9th Cir. 2000). "[I]solated or sporadic incidents" are insufficient to enable municipal liability. *Trevino*, 99 F.3d at 918.

Like municipalities, "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)). In order to hold supervisors liable under § 1983, there must exist "either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 646.

Plaintiffs contend that "there are several issues of fact that must be decided by a juror, including, but not limited to, whether [Mr. Gonzales] 'threw an elbow' at Augustine and whether [Ms. Gonzales] was detained for the entire execution of the search warrant . . . ." (ECF No. 21 at 7). Plaintiffs further contend that "Deputy Augustine was not acting within the standard of police practices and procedures during his encounter with [Mr. Gonzales], and in obtaining and executing the search warrant." *ID.* at 6–7. Plaintiffs summarily argue that these issues, along with alleged deficiencies in the search warrant, "rise to the level of a claim for relief under 1982, supra, and *Monell* and the shield of qualified immunity is lost." *Id.* at 6.

The parties stipulated to dismiss Deputy Augustine from this action on February 4, 2019, which the court granted on February 12, 2019. (ECF Nos. 10; 11). Now, only Sheriff Wehrly and Nye County remain as defendants in this action. Accordingly, plaintiffs must show that there is a genuine issue of material fact as to the remaining defendants, not Deputy Augustine.

Plaintiffs' response to defendants' motion does not address the issue of supervisor liability or *Monell* liability outside of the single cursory proposition discussed above. Plaintiffs do not include any evidence that Sheriff Wehrly personally participated in the underlying traffic stop or search. Nor have they submitted any evidence or argument that the underlying traffic stop or search were the proximate result of a municipal practice or policy.[3]

Consequently, plaintiffs' § 1983 claims against the remaining defendants fail.

*B. State law claims*

As an initial matter, Nevada Revised Statute ("NRS") 41.0335(a) provides that "[n]o action may be brought against [a] sheriff or county assessor which is based solely upon any act or omission of a deputy." As discussed above, plaintiffs do not present any evidence or otherwise argue that Sheriff Wehrly was personally involved in any of the underlying conduct. Instead, the claims against Sheriff Wehrly stem entirely from her position as Deputy Augustine's

---

[3] The parties dispute whether this court should consider plaintiffs' expert witness's report. (ECF Nos. 19; 21; 22). Even if this court considers the report, plaintiffs' expert witness acknowledges that "[t]he [c]omplaint states that [Nye County Sheriff's Office] has a pattern, practice, and custom of deliberate indifference against citizens of Nye County, NV." (ECF No. 19-5 at 9). But even plaintiff's expert witness "await[ed] more documentation on these patterns and practices." *Id.* Apparently, plaintiffs did not provide such documentation to either their expert witness or this court.

superior and supervisor. Accordingly, NRS 41.0335 bars plaintiffs' state law claims against Sheriff Wehrly, and summary judgment is appropriate.

The court now turns to the plaintiffs' remaining state-law claims against Nye County.

### *1. Malicious prosecution*

Under Nevada law, "the elements of a malicious prosecution claim are: '(1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage.'" *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (quoting *Jordan v. Bailey*, 944 P.2d 828, 834 (Nev. 1997)). Notably, the termination of the prior criminal proceedings must have been in favor of the accused. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Day v. Zubel*, 922 P.2d 536, 539 (Nev. 1996).

Plaintiffs neither allege nor argue that the prior criminal proceeding was terminated in Mr. Gonzales's favor. To the contrary, defendants note that Judge Sullivan found probable cause to support the battery charge, and Mr. Gonzales later entered a no contest plea to obstructing a public officer and resisting a public officer. (ECF No. 19 at 8). This is fatal to plaintiffs' malicious prosecution claim. Summary judgment is appropriate, and defendants' motion is granted as to this claim.

### *2. False imprisonment and false arrest*

Nevada adopted the Second Restatement as it pertains to false imprisonment and false arrest:[4]

> an actor is subject to liability to another for false imprisonment "if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it."

---

[4] Nevada law treats false arrest as one portion of false imprisonment: "To establish false imprisonment **of which false arrest is an integral part**, it is . . . necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification." *Hernandez*, 634 P.2d at 671 (quoting Marschall, 464 P.2d 494). Accordingly, the court analyzes the two causes of action together.

*Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (quoting Restatement (Second) of Torts § 35 (1965)). However, the Nevada Supreme Court has clarified that any restraint must be done "without any legal cause or justification therefore" in order for a plaintiff to prevail on a false imprisonment claim. *Marschall v. City of Carson*, 464 P.2d 494, 497 (Nev. 1970). Legal justification exists if there is probable cause. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). As the United States Supreme Court explained in *Beck*:

> Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Id.*

In response to defendants' motion, plaintiffs summarily argue that "Deputy Augustine lacked probable cause in arresting, detaining, and executing said search warrant. As a result, [Mr. Gonzales] was unlawfully imprisoned, and [Mrs. Gonzales] was unlawfully detained." (ECF No. 21 at 6–7).

Mr. Gonzales concedes that he was operating his off-highway vehicle without a registration display. (ECF No. 19). Although Mr. Gonzales notes that he legally had thirty days to register his vehicle, he does not address defendants' argument that Deputy Augustine had no way of knowing that Mr. Gonzales's vehicle was subject to Nev. Rev. Stat. § 490.082. *Id.* Further, Mr. Gonzales concedes that he was not wearing a helmet. *Id.* Thus, Deputy Augustine—observing a vehicle without registration and a driver without a helmet—had probable cause to initiate a traffic stop.

Further, Mr. Gonzales takes issue with defendants' argument that he was "belligerent." Instead, Mr. Gonzales notes that Deputy Augustine described him as "confrontational." (ECF No. 21 at 3). Mr. Gonzales does not actually dispute that he was "confrontational" with Deputy Augustine. Indeed, during his deposition, Mr. Gonzales admitted to calling Deputy Augustine a "punk ass cop" during their encounter. (ECF No. 19-6 at 23–24).

Additionally, defendants note that "[a]s a consequence of his arrest for assault on an officer, a 'Triple I' check was run against Mr. Gonzales. This revealed apparent prior felony convictions from California, which in turn raised the issue of Mr. Gonzales' rights to own firearms, and firearms that he holds. On the face of it, he is not entitled to do so." (ECF No. 19 at 13). Mr. Gonzales admits that he had a gun with him during the traffic stop. (ECF No. 19-6 at 18–19).

But Mr. Gonzales does not submit any evidence to show that his felony conviction was expunged or pardoned or that he could otherwise legally possess a firearm. As defendants point out, "Mr. Gonzales still has no evidence to prove he is not a convicted felon barred from owning firearms." (ECF No. 19 at 2). Even at his deposition, Mr. Gonzales was unsure if he was a convicted felon, whether he had his record expunged, or even what charges he faced. (ECF No. 19-6 at 8–11, 28–30). Thus, Mr. Gonzales has presented no evidence to contravene Deputy Augustine's "Triple I" results. Because Mr. Gonzales had a gun with him and Deputy Augustine had evidence to show that he was a felon, there was probable cause for the arrest.

Plaintiffs also assert false imprisonment because Mrs. Gonzales was handcuffed while officers searching the Gonzaleses' home. Plaintiffs' argument rests on the same assumption: that purported deficiencies in the warrant meant that "Deputy Augustine lacked probable cause in arresting, detaining, and executing said search warrant. As a result, . . . [Mrs. Gonzales] was unlawfully detained." (ECF No. 21 at 7). Mrs. Gonzales "disputes being released from handcuffs . . . 20 minutes after the warrant execute began." *Id.* at 3. Plaintiffs further argue that she was neither a flight risk nor a threat to officer safety. *Id.* at 4.

This claim fails as a matter of law. In *Michigan v. Summers*, the United States Supreme Court held that officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). This principle was further clarified in *Muehler v. Mena*: "An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (citing *Michigan*, 452 U.S. at 705 n.19). In *Muehler*, "[t]he

officers' use of force in the form of handcuffs to effectuate Mena's detention in the garage, as well as the detention of the three other occupants, was reasonable because the governmental interests outweigh the marginal intrusion." *Id.* at 99 (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

Here, officers used their categorical authority to detain Mrs. Gonzales while they searched her home for weapons. The officers used force in the form of handcuffs to effectuate the detention of Mrs. Gonzales. This detention does not rise to the level of false imprisonment because there was legal justification for it. Indeed, "[t]he governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises." *Muehler*, 544 U.S. at 100. While there was no wanted gang member on the premises, officers were searching the home of a convicted felon for weapons. As a result, plaintiffs' false imprisonment claim fails.

Accordingly, plaintiffs' false arrest and false imprisonment charges fail. Defendants' motion for summary judgment is granted as to those claims.

### 3. IIED

The elements of IIED in Nevada are "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) . . . plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998) (citing *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993)). Nevada plaintiffs alleging IIED must also present "objectively verifiable indicia of the severity of his emotional distress." *Id.*

Plaintiffs make no argument and present no evidence regarding the severity of their emotional distress. Plaintiffs do not suggest that they sought or required counseling or had any physical manifestations of their alleged emotional distress. Under Nevada law, plaintiffs' omissions are dispositive of their claim. Accordingly, summary judgment in defendants' favor is appropriate as to this claim.

. . .

. . .

### 4. Civil conspiracy

The Nevada Supreme Court explained the elements of civil conspiracy under Nevada law as follows:

> Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent "to accomplish an unlawful objective for the purpose of harming another," and damage results. *Consol. Generator–Nevada, Inc. v. Cummins Engine Co.,* 971 P.2d 1251, 1256 (Nev. 1998). Thus, a plaintiff must provide evidence of an explicit or tacit agreement between the alleged conspirators. *Dow Chemical Co. v. Mahlum,* 970 P.2d 98, 112 (Nev. 1998).

*Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 813, 335 P.3d 190, 198–99 (2014). The Nevada Supreme Court also expressly explained that "[s]ummary judgment is appropriate if there is no evidence of an agreement or intent to harm the plaintiff." *Id.* (citing *Consol. Generator–Nevada,* 971 P.2d at 1256).

Here, plaintiffs do not present any evidence of an agreement to wrongfully arrest and detain plaintiffs. Defendant's argue that without evidence of an agreement, summary judgment on this claim is appropriate. Plaintiffs do not address this argument. Accordingly, summary judgment is appropriate on plaintiffs' civil conspiracy claim.

### 5. Negligence and respondeat superior

Plaintiffs' negligence and respondeat superior claims against defendants stem from the alleged "duty to supervise subordinates," which they purportedly violated "by allowing [d]efendant Augustine and the team executing the search warrant to commit the above-described acts" and "by failing to exercise reasonable care and control over [d]efendant Augustine and the team executing the search warrant when it appeared they had falsely arrested Plaintiff." (ECF No. 1 at 18–19).

Plaintiffs' claims fail because the underlying tort claims have been dismissed. Plaintiffs have failed to adduce evidence that shows Deputy Augustine acted unlawfully or improperly. Thus, defendants did not breach any duty they owed to plaintiffs, if any.[5]

---

[5] Defendants raise the argument that plaintiffs' negligence claim is barred by the public duty doctrine. (ECF Nos. 19 at 28–29; 22 at 15–16). Although plaintiffs do not respond to this argument, the court need not reach that issue.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 19) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment and close the case accordingly.

DATED February 14, 2020.

UNITED STATES DISTRICT JUDGE